Good morning, Illinois Appellate Court, First District. Court is now in session, the Fourth Division. The Honorable Justice Robert E. Gording presiding. Case number 1-9-1675, State of Illinois, Thouless v. City of Chicago. Hey, will the lawyers who are going to argue the case please introduce yourself to the court? Good morning, Your Honors. Clint Krislov on behalf of the relators, Mr. Thouless and Webb. Good morning, Your Honors. It's Christopher Turner, the Assistant Attorney General representing the Appellee, the Attorney General of the State of Illinois. You're going to argue for the appellee? Correct, Your Honor. I'm sorry. Yes, I'm arguing for the appellee. And does the appellant want to reserve any time for rebuttal? Yes, Your Honor. I'd like to reserve five minutes is probably fine. Let's proceed. Good morning, Your Honors. It's good to see you again from a distance. Can you hear me okay? Yes, we can hear you fine. Okay. One thing I think we can do, I've done these arguments in the past, but I suggest that we figure out a way so that the public and more than just the parties can actually tune in on a muted basis. I think it preserves the importance of the public argument just for this perception of justice. But that's just my suggestion. I won't tell you what your we all know. This is a case in which we uncovered the fact that the city of Chicago was violating the Unclaimed Property Act. And that had sat on for 30 years, over 22,000 checks totaling over $11 million. And we brought a case as a whistleblower case for the state against the city for the uncast checks that were sitting there or amounts that the city owed. Mr. Kristoff, I have a question. Was there a hearing on the motion to dismiss? There was a hearing, but the judge, without addressing the merits, dismissed the case on the state's motion. And that's the crux. In the record, there doesn't appear any transcript as to the hearing. I guess there was no hearing. The judge just entered an order. I think we appeared and the judge or the judge just entered the order, took no testimony or arguments in any way. And that's the crux of what we're talking about. Because here, whether you go by the standard that the state wants, which is that we would have to show glaring evidence of the state's fraud or bad faith in seeking to dismiss the action. Actually, our burden is only to show that the dismissal would be fraudulent, arbitrary, and capricious or illegal. But the fact of the matter is that the state's whole basis for dismissing it is that in 2008, the attorney general then, there was a newspaper article that says that the attorney general was aware of this and was moving to fix it. And we discovered only 10 years later that the attorney general had done nothing. And the crux of our case is that the city of Chicago operating in blatant violation of the Unclaimed Property Act to conceal $11 million of 22,000 people's money and not pay them, that's not how the act works. The city is- Let me ask a question about the article. Now, was the article that the attorney general's office submitted to the court, was that directly related to the issue at hand in this case at this time? No, no. It was related. It was in some separate case. It was published that there were these uncast checks in 2008 that the city had sat on and that the attorney general was working with the to address the problem. And it had nothing to do with our case. Our case was a separate, the result of an FOIA request that I made in 2018, which uncovered the fact that despite, no one knew about the article until the state filed their motion to dismiss. And in the article, it said that the attorney general is working with the city to correct the problem. And- Let me ask you this. If it's not related to this case, how does that in any way trigger the public disclosure bar? Oh, it shouldn't because as the federal cases make clear, where the actions are a different time totally as they are here. We would say that we uncovered the 10 years of uncast checks after the problem had supposedly been corrected, but it hadn't. So it doesn't, it should not be the bar. It should not be a bar here. It isn't related to this case in any way, shape or form. And in fact, we couldn't even find that there was anything in the reported, in the case that they cited an article in the Tribune, I believe, that said they were addressing this issue. Counsel, let me ask you one question. And I have to admit, I haven't read the article. I am going to read the article, but in one of your briefs, I assume it's the AG's brief. It does say that article relates to cases from 1999 to 2008. So that certainly covers part of the period that you're alleging was somehow kept from the public's view. You started 1988 and go to 2018. But if the city, I'm sorry, if the state knows that there's cases from 1999 until at least 2008, and they don't, and they haven't done anything about it, how is the city defrauding the state when the state has the knowledge that this is going on? The city is in violation. It's not, we're not alleging fraud, we're alleging violation of the Unclaimed Property Act, because the Unclaimed Property Act works to require people, including government agencies like the city, to advise people, if it has unclaimed property, that their property will be turned over in at least, they have to give them at least 60 days, no more than a year, but then they have to give them notice they're going to turn it over to the state. And then the city is required, was required to turn it over to the state, and then the state puts it on its iCash website, which is really a very good website, so people can find if anybody owes them money that they hadn't been aware of and hadn't found. And so ultimately, and plus the state gets to use the money in the state pensions fund, that is the product of the unclaimed property. The real crux of this is that for those 22,000 people, $11 million, the state is actively permitting the city to violate the law. The Attorney General's job is to enforce the law. There's no assertion that the city is in compliance with any provision of the law, and it has to just comply with it. And so while you perhaps were not saying that the city was defrauding the state because the state is aware of it, the state cannot just say, we will allow the city to violate the law and not report it. Even if the state wanted to indulge the city to some extent, at the very least, it would require the city to report the monies to the state so that the state could put them on its website so that people could find their money. And there are people in there like Hull House had $100,000 that perhaps it could still be open today. I hope I answered your question that way. Yeah. I'm having a difficult time understanding how the city has done anything if the state knows it and the state hasn't done anything. If the state hasn't taken any action and they're aware of it, it seems to me that there has been a prior public disclosure of this suit, and therefore, you don't have anything new other than a continuation. I know you're relying on a federal case, but there are state cases, I think, that say that that continuation, I mean, new things that happen after the disclosure is still part of that disclosure if it basically springs from that disclosure. You don't have a new clause of act. Well, our case didn't spring from their disclosure, for one thing. They just cited the, in their submission, they cited the August 11, 2008 Tribune article as if it had been made public that it's being fixed. And the fact is, it wasn't being fixed. The Attorney General was that Attorney General then and the Attorney General now, if they're aware of it, they are complicit with allowing the city to violate, to utterly violate the unclaimed property law, whether it's to the interim benefit of the state or the ultimate benefit of the people sought to be benefited. The state is allowing the city to evade, to violate the law. They are... The statute allow them to have unfettered, you know, discretion in terms if they want to proceed or they don't want to proceed. I mean, basically, that's what the statute seems to imply. But the decisions make it clear, and even they say if there's glaring evidence of the state's bad faith, this is bad faith. This is intentional violation of the law by the city. That's bad faith. And actually, our burden is only to show that the dismissal would be fraudulent, arbitrary, and capricious or illegal. And the answer is, it certainly is arbitrary and capricious to the point that the city is in clear violation of the unclaimed property law. And the Attorney General is permitting it by dismiss, by moving to dismiss. It is illegal action that is being permitted and encouraged, actually. Going back to the article in the article, and, you know, I haven't read the article, but I understand from the record that it implied that the Attorney General at that time says, you know, we're working on it. So they're working on it. Might be taking them a while, but they're working on it. So how is that arbitrary in the sense that, you know, they know the situation and they're just working on resolving it? If it's your money, Your Honor, if it's anybody's money, the money belongs to the people who are the owners of that money. It does not permit the city to take an interest-free loan in perpetuity by concealing the money. Indeed, the Unclaimed Property Act has interest and penalties. The disclosure that they're fixing it was simply either, well, I'll take them at their word that Attorney General Madigan then was working on it with the city. They did not fix it. They did not solve it. They didn't do anything. It doesn't take a lot, doesn't take anything to comply with the law, every bank, every person, you and I as well. We'd be glad to, we'd be glad to allege a new time period of just after the 2008, but nobody was aware of anything, even the article until the state submitted it. And if that's a defense to the actions, the fact is it doesn't take 10 years to fix sending out notice to people. It doesn't take 10 years to report it to the state of Illinois. It doesn't take, it takes no more than doing it. And this is, and the Attorney General's not only permitting it to happen, but saying we're fixing it and then not. And for a decade thereafter and still today, you know, if the city wanted, if they wanted to assert a defense of good faith, what they would do is they would have the city report it all to the state. And if the state wanted to put it on their website, that was fine. They could arrange for the money to be transferred whenever it was claimed, but this way people have no way of finding their money. It's just not right. And it's not right for the Attorney General to permit the city to continue and actively permit the city to continue by seeking to dismiss this case, which is to force the money to be reported to the state and turned over to the state so that people can find it. So I reserve some time for rebuttal. Yes, please. All right. Why do you want to get back? Are there any questions here? Yeah, just, I want to just get back to the, so I'm not clear. Was there a hearing or was there not a hearing on the motion to dismiss? There really, there wasn't a hearing. The judge just issued his ruling. There wasn't argument. He, you know, we had sought to have a hearing. We, but he just entered his decision. Well, did you ask for a hearing? Yes. Is it in the record, an appeal? I, I, we had our motion for a hearing. We had our motion. During the time that my colleague, Mr. Turner is arguing, I'll find the answer to that question, okay. Any other questions? No. Okay. Let's, okay. Let's hear from the attorney general. Thank you, your honors. Good morning. Counsel may please the court. I'm Christopher Turner, the assistant attorney general here on behalf of the appellees, the attorney general, the state of Illinois. Now the re this court should affirm the circuit court's dismissal of this key term action with prejudice under section four C two way of the Illinois false claims act and should do so we should get to what is the issue on appeal. It is whether or not the relators have provided glaring evidence of the state's fraud on the court or bad faith on the court in dismissing, dismissing this action. And they have not, that is the standard that this court is now in its prior authority twice ruled as the standard. And actually it's a standard required under Illinois Supreme court authority, interpreting the plain terms of the act. And also finding that if the act, um, didn't, if they act actually imposed a more searching standard, like the cert, the standard that the relators proposed, it would violate the constitution and the key transactions would be, let me ask you this. Why isn't it not bad faith when you're doing nothing, uh, in regard to the money? Um, so your honors, just to clarify what's going, the claim is it's actually, I mean, they can make the same claim against the attorney general, the treasurer enforces the unclaimed property statutes. So they're the administrator of the statutes. We, we of course are the attorney general, the legal representative and the sole legal representative for the state treasurer in that, but the treasurer, the attorney general or any other state official always will be making prosecutorial decisions in their prosecutorial discretion when, and if to enforce, um, what a possible violation here, though the Chicago, obviously disputes it was, we saw in the article that we cite, they believe they have a constitutional defense under the home rule provisions that they're not required that these, uh, that these, uh, this property is, doesn't actually, is not unclaimed property under the statute. The treasurer could, for a number of reasons to have decided actually successive treasurers now, all of who have been aware of this to not yet bring an action against them. And they are entitled to do that. They are entitled to do that under separation of powers. They're entitled to do that because they are the duly elected officials. The fact that they haven't done that, whatever, it's because they think the Chicago defense has merit or that it raises too much risk, or if there's even other reasons why that does not show bad faith. And this court has made clear that disputes with the, with the state's position in that alone, even if the disputes are right, um, does not provide, uh, glaring evidence of fraud or bad faith. It did it in the Burlington factory decision, and it did it again in the QVC Inc decision. Oh, well, what is the state going to do with, with that money? They're just going to, uh, let it be. Your honor, it is up to the state treasurer to decide when, and if to enforce that, whether or not they believe that there is actually violation going on and to choose the battle when the state treasurer decides to, but what the act, the false claims act doesn't do is it doesn't allow the relators to force the state to make, to take that action. If it has decided not to do that yet. Now, I'm sorry to interrupt you, but don't you have to prosecute first before the treasurer could say, okay, I want to, you know, utilize these funds. Doesn't the prosecution have to take place first in terms of enforcing the act? Uh, is the treasurer has to first use the administrative procedures under the act to, to, in order to enforce them against somebody. If he decides in his discretion that one, there is a violation of the statute and two, that they need to enforce it is discretionary action or the terms of the unclaimed property statute with the treasurer as well. But we got regardless the state state officials always have prosecutorial discretion. That's what the federal authority is actually recognized at two in the, in the fight going on there between what standard to apply and all agree that it does. But the state here, courts have already recognized that, that with that prosecutorial discretion, that the, it is the burden on the relators to prove bad faith or fraud on the court and simply disputing the merits of the case. It doesn't do it in the Burlington Coke factory. They just actually, I mean, the state didn't say that it was a tax collection against the retailer. It did. The state didn't say that this retailer was definitely right. They said they probably couldn't collect because there probably wasn't a sufficient nexus. The state wasn't going to sit here and try to concede its powers in it, but it did actually, it did show that it had risk there. And then the court in Burlington Coke factory, this court said, Hey, they might very well be right. The decision, not only made the attorney general be wrong in this, but maybe their decisions are betraying capricious. It doesn't matter. We're not going to resolve that issue because they're to speak with it. And the fact that they might be right is not glaring evidence of fraud or bad faith on the court. We go back to the article for a moment. So why aren't the realtors here tools and web original sources is the article that was presented to the court. Is it really related to the, you know, the issues of the case at hand? So it doesn't how does that trigger the public disclosure bar since it's not the same type of case? Your honor, actually it is the same type of case. And they cite no authority, even suggesting that it's not the disclosure. Does it in order for a public disclosure to bring a subsequent action within the bar, all it has to do is it has to, that the later action has to be based on or substantially similar to the allegations. I'm sorry, the transactions or allegations, which are contained within the article. And here it's, it is the exact same. The article is about the city of Chicago. It's about its practice of not turning over uncashed claim checks. It gives one of the reasons it says that it can do that. And it believes that it is proper under Illinois law because it believes home rule protects it and protects its regulation of those uncashed checks. It reports to the treasurer and has known about it. And the treasurer has taken at that point, taken some inquiries with them and was negotiating a settlement with them. That's what the article is about. The attorney general spokesperson does make a point on it, but that brings it within the bar. That is all, that is the standard. We cite case after case, the cause of action versus CTA case, the more releasant Bellevue and Bojena cases. The relators in order to, all they cite was a seven certain case, the APREA healthcare case, which did not even address the public disclosure bar. It was looking at the statutory equivalent of the first to file rule that comes up when you have a prior action, it's the same action. And that action, actually, if you read it carefully at the end, it found that the action, even though it covered some later time periods, it still fell within the first to file rule. The only reason it actually vacated the dismissal under that rule was because it had been set, the prior action had been settled and the case dismissed. And then in that circumstance, that bar does not apply. The public disclosure bar goes on. Once the information is in the public sphere, then subsequent actions that are based on or substantially similar to those, they are barred under the public disclosure bar, unless they can prove they're an original source. As we argued, they don't hear. And the fact that they allege that it continues afterwards, where we are, I'm aware of no case law that says that that brings it outside of the bar, because they have to materially add to the allegations that are, I'm sorry, that materially add to the information that's being provided, the basic claims in the prior public disclosure, and the continuing of the misconduct is not. We cite a series of cases which have decided that, again, cause of action, Bojino and Bellevue are just the more recent ones. They do not cite anything to the contrary, and we aren't aware of any. And so this court, if it were to rule that way, would be making new law. I mean, it would be making a new development in the law of both not only for the state of Illinois, but in federal law and applying the disclosure bar. But the important aspect here for this appeal is the court shouldn't even be making that decision. When we raise, when we explain the reason we did it, we don't believe that the attorney general is not required, the state's not required to explain its reasons. The burden is on the plaint, on the relator to show why it was, why, sorry, to present glaring evidence or bad faith of the problem. We don't, when we don't want to dismiss an action, we don't want it to go forward. We don't want to create ad law. We don't want, we don't think an action, which is going to be dismissed on these bases, whether it's on an inability to prove the fraud, the materiality, or to get by the public disclosure bar is a good case to be brought. We think- What about the issue of, it appears that there was no hearing and the statute says that regardless of whether or not judge has discretion or not, if we follow Burlington Folk Factory, the statute still says there has to be a hearing. And it appears that there may or may not have been a hearing here. Your Honor, actually the statute provides, it says that there must be an opportunity for hearing that in Burlington Coat Factory says an opportunity to be heard here on the, in the relay tours did not, there's, I am not aware of any request below for a hearing. They did not make a request for a hearing in the circuit court. As far as I'm aware, they did not make a request when there was a hearing within a few days after an emotion reconsidered. You didn't hold a hearing when you issued this decision, we'd like a hearing. And they didn't even mention it at all in their opening brief. So they forfeited it three times over. Now, if they, and they didn't actually even raise the argument in the reply brief. So it has been forfeited repeatedly. If they had raised it, we would point, we would have responded and pointed out that it is only an opportunity to be heard. They must, they need to request it. And that the, the only cases we're aware of the federal case in federal law outside of the federal decisions, which have issued said the exact same thing. There is no automatic right to a hearing. So, I mean, if we could get one case is chain versus a recent one is by the third circuit court of appeals, the federal court of appeals, that is a chain versus a childhood city center here. I'll just find the site for you just so you know, but it addressed it. And in that case, the the relay tours had said, Oh no, you didn't provide a hearing. And the court affirmed the dismissal under the federal statute because they hadn't requested it. And also they hadn't presented any evidence that would raise a colorable claim that would have been used at a hearing. I will find, sorry, your honors. I just need to have that site for you right here. Just to it is yeah. Chang versus children's advocacy center at nine three, eight F third, three 84. It's a 2019 case. And that case also sites to some of the other cases. I'm here. They did not request a hearing. And also the only arguments, as we said, they didn't present any evidence of flaw. They just made these legal arguments disputing the legal merits of the state's decision. So they had an opportunity to be heard on their objection briefs. And if they wanted a hearing, they could have explicitly requested one, which as far as we're aware, they do your honors. So I'm not sure how much time I have left. You don't have any time left. So, but let's sum it up if you can. Okay. Thank you. So I just want to, again, though, emphasize that we don't believe that the court needs to decide as it said in the prior decisions, it does not need to resolve the legal issues underlying the reasons that the state is dismissing the case. However, the important fact is that they don't that their disputes do not constitute glaring evidence of fraud or bad faith, and therefore the dismissal should be affirmed. Thank you. That rebuttal. Thank you, your honor. To answer your question, Justice Gordon, at a 39, the court's order of the circuit court's order of July 2nd, 2019, said the seal is continued to August 19, 2019, and August 19 at 9am for hearing, which instead of a hearing, the court just issued its decision. The issue they say that they try to term it as bad faith on the court, but it is not. That's not the test. Bad faith of the state or arbitrary or capricious would be to condone illegal action by the city. Nobody asserts that the city has a right to do this. This is contrary to state law. If we were supposed to have, we expected to have a hearing, there was nothing legal to support. The city doesn't have the right to do this. Oh, they did not previously challenge the original source. The cases are clear that, in fact, we were the plaintiff's counterrelators council in Apria, where it involves a different time period than was involved in the other case. It's a new that it does not suffer the impediment of a public disclosure, especially here where the public disclosure was only the assertion of an article. They never submitted the case. They never submitted the article. They just cited to an article in the Tribune as the fact that they knew about it and were fixing it. The fact of the matter is, where they declare that they're fixing it, it's wrong. The attorney general is acting in bad faith when the attorney general says we're going to fix it, whether they do or they don't. Then to say, nonetheless, because we said we were going to fix it 10 years ago, you are barred from bringing it now, even though we haven't fixed it and we have no intention of fixing it. Also, finally, the... Was there any evidence of them fixing it at all? No. No. All that was ever submitted was a mention of the article in the Tribune. In fact, we went back to find the case and there's really nothing about this in the Tribune. We sought to amend the complaint in order to seek redress for the dismissal, figuring that the benefits of the purpose of the Unclaimed Property Act are certainly as well to benefit the affected people. That was denied. We did file a separate case to that effect, not dealing with the Unclaimed Property Act for the state. That's been stayed pending the decision on this case. The fact of the matter is, the city has no basis, no legal basis for continuing to conceal this. The state has no business. The attorney... Oh, sorry. The attorney general entered. The state treasurer as administrator never appeared anywhere in our case. We don't know that the administrator has determined that it isn't worth pursuing or that he chose not to pursue it. But if he chooses not to enforce the law against the city of Chicago, what's the purpose of the attorney general but to enforce the law? The law as written, it's clear. The city doesn't have a defense. The only thing they're doing is keeping people's names. We published the list and we talked about it. A woman who had $235 from the city, she got her $235, albeit that it should have been issued to her in 1988. The fact of the matter is, what they're doing is wrong and concealing it is wrong. And this court has the power to order that the dismissal be reversed and that we be allowed to proceed to enforce the law against the city so that people can find out about their money and get it. It's only right, Your Honor. Thank you. The other action that you have pending, is that a class action? Yes, on behalf of all the people who were in the unclaimed list. Any other questions? No, thank you. Well, thank you for a very interesting case and you should have an order or an opinion shortly. Thank you. We thank you for the very good case. The court will be adjourned, but the justices will remain.